IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TAMARA L. MOYLE,**

    Plaintiff,

vs.                                 Civ. No. 99-1360 JC/DJS

**KENNETH S. APFEL,
Commissioner of Social Security,**

    Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

1. Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. Williams

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

    2.    Plaintiff applied for Supplemental Security Income (SSI) on September 23, 1996 alleging a disability since January 27, 1995. Tr. 105, 117. The application was denied initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ). The ALJ found that Plaintiff was not disabled. Tr. 24. The Appeals Council denied Plaintiff's request for review. Tr. 7. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

    3.    Plaintiff alleges a disability due to neck, shoulder and right arm pain and weakness, and temporomandibular joint syndrome. Tr. 105, 117. Plaintiff was born on September 22, 1959. She has attended college but did not graduate.

**Issues**

    4.    Plaintiff alleges the ALJ made four errors. Specifically Plaintiff claims that: (1) the ALJ erred in not finding that her condition satisfies Secs 1.05C and 12.04 of the Appendix 1 Listing of Impairments; (2) the ALJ improperly rejected the conclusions of Plaintiff's treating physician; (3) the ALJ improperly found that the Plaintiff's testimony was not credible; and (4) the ALJ erred in not fully considering the Plaintiff's psychological problems.

**The Standard of Review**

    5.    The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

    6.    The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612

F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.  Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by

incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

   9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225

(10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

    10.  Plaintiff argues that she met Listings of Impairment 1.05C and 12.04.  Plaintiff has the burden of proving that her condition satisfies all the criteria of an impairment listed in Appendix 1 of the Regulations.  Subjective complaints alone are not sufficient. See Sullivan v. Zebley, 493 U.S. 521, 534 n. 14 (1990).  Thus, to meet Section 1.05C Plaintiff must show that she has a vertebrogenic disorder such as a herniated nucleus puplosus or spinal stenosis with all of the following persisting for 12 months: pain, muscle spasm, significant limitation of motion of the spine, significant motor loss, muscle weakness, sensory loss and reflex loss.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 Sec 1.05C.

    11.   A review of the record clearly shows that Plaintiff's condition does not meet all the medical criteria of Sec 1.05C for 12 months.  In November of 1995 Dr. Seago noted that upon physical examination Plaintiff had normal sensation, normal motor strength testing, normal reflexes at the knees and ankles bilaterally, negative straight leg raises, and no muscle loss.  Tr. 461. Plaintiff's treating physician, Dr. Muller, in April of 1996 reported that Plaintiff straight leg raising was negative and reflexes were 2+ bilaterally.  Tr. 267.  He also noted she had no muscle loss and equal muscle strength.  Tr. 216, 287.  When asked

on an Administration form if the Plaintiff met the medical criteria of Sec. 1.05C he wrote that she did not have the appropriate distribution of significant motor loss.  Tr. 155.  Dr. Benzel also noted that Plaintiff had normal strength, only slightly decreased sensation to light touch along the right C6 distribution, normal reflexes and normal Babinski testing.  Tr. 257-258.  An examination in June of 1997 showed Plaintiff had normal muscle strength and no sensory deficits.  Tr. 271.  In October of 1997 Plaintiff's muscle strength was grossly intact and she had normal gait and normal deep tendon reflexes.  Further her two point discrimination, vibratory, stereognosis and joint sensation were all normal.  Tr. 438.

   12.   To meet Sec. 12.04 Plaintiff must show her condition satisfied both Part A and B.  The ALJ found that Plaintiff's condition satisfied part A.  To satisfy Part B Plaintiff must have two of the following:  "1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; and 4) repeated episodes of deterioration or decompensation in work or work-like settings causing her to repeatedly withdraw from that situation."  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 12.04.  The record shows that Plaintiff does not meet at least two of these requirements.  As above, Plaintiff refers to pages in the transcript without citing to specific evidence.  Most of the exhibits cited by Plaintiff were notes of physicians who were

treating Plaintiff's physical complaints.  Plaintiff cite, without argument to a February 1997 report by Dr. Muller who notes that Plaintiff's father believes Plaintiff is depressed and suicidal. Tr. 317.  Plaintiff cites to another report in March of 1997 in which a psychiatrist wrote that she could not make a psychiatric diagnosis at that time.  Tr. 318.

    13.  Further the clinical findings in the record support the ALJ's findings.  In a July of 1997 evaluation at the UNM Mental Health Center Plaintiff was noted to have good hygiene, normal thought processes, normal thought content, and clear and coherent speech.  She was fully oriented and had good eye contact.  It was determined that her insight and judgment were adequate and that she had no suicidal or homicidal ideation. Tr. 313.  In August of 1997, she was improving.  She was less depressed. Tr. 302.  In December of 1997, her condition was stable on medication. Tr. 308.  The Plaintiff requested that her medication be refilled in January of 1998 and reported that it was helping her.  Tr. 320.

    14.  It is clear from the above that the record contained sufficient evidence of the ALJ to make an informed decision regarding Plaintiff's mental functioning. Plaintiff's argument that a consultative psychological examination should have been ordered is without merit.  See <u>Diaz v. Secretary of Health and Human Services</u>, 898 F.2d 774, 778 (10th Cir. 1990).  It is further clear from the record that the ALJ fully considered Plaintiff's allegations of a mental impairment.

15. The ALJ correctly discounted Plaintiff's treating physician's opinions because they were not supported by the objective medical evidence. See Goatcher v. Department of Health and Social Services, 52 F.3d 288, 290 (10th Cir. 1995). The ALJ's decision correctly gave specific reasons for not giving Plaintiff's treating physician great weight. See Tillery v. Schweiker, 713 F.2d 601, 603 (10th Cir. 1983). For instance, Dr. Muller completed a form to submit to the Administration saying that Plaintiff had, *inter alia,* fibromyalgia. This diagnosis is not in any of his progress notes. Further, Dr. Muller stated that Plaintiff could not sit, stand or walk more than 10 minutes and could not lift any weight. Tr. 21, 139-140. Again, this is not supported by Dr. Muller's medical records. Tr. 267, 216, 287. At one point Dr. Muller stated that Plaintiff could return to work in three to six months. He further wrote that Plaintiff had somatic complaints that should be treated more than her physical complaints. Tr. 16-17. Further, the ALJ noted that since the spring of 1996 Dr. Muller and other examining physicians did not make any findings related to any lumbar problem. Tr. 16. The medical record does not support a finding of disability.

16. The ALJ's finding that the Plaintiff is not credible is supported by the substantial evidence. The ALJ correctly looked at factors beyond the objective clinical findings. See Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). For instance he points out that

there are contradictions between Plaintiff's alleged symptoms and what her physicans have noted.  For instance one treating physician noted that her objective medical findings were modest compared to her "dramatic pain behavior."  Tr. 289.  Dr. Abram said there was a somatic component to her pain.  Tr. 284.  Plaintiff said she had fibromyalgia and chronic fatigue syndrome.  There is no objective medical evidence to support these claims.  She also alleges problems with memory, concentration and tolerance for stress.  Tr. 166.  Again, the objective medical evidence does not support these claims.

    17.   To conclude, Plaintiff has failed to carry her burden in establishing that she has a disabling impairment.  Plaintiff failed to demonstrate in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. Sec. 423(d), that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last lasted or can be expected to last for at least 12 months.  42 U.S.C. Sec. 416(1)(10).  The Act defines a physical or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques."  42 U.S.C. Sec. 423(d)(3).  The Commissioner' regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 20 C.F.R. Sec.404.1513.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
**Don J. Svet**
**United States Magistrate Judge**